UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBIN SHUTTS,

               Plaintiff,

v.                                                            8:12-CV-0734
                                                                      (GTS)
CAROLYN W. COLVIN, Comm'r of Soc. Sec.,[1]

               Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

OFFICE OF MARK A. SCHNEIDER           MARK A. SCHNEIDER, ESQ.
 Counsel for Plaintiff
57 Court Street
Plattsburgh, NY 12901

U.S. SOCIAL SECURITY ADMIN.              BENIL ABRAHAM, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court, in this Social Security action filed by Robin Shutts

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. § 405(g) are the parties' cross-motions for judgment on the pleadings.

---

[1]      Plaintiff's complaint named Michael J. Astrue, as the Commissioner of Social Security, as the defendant. On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commissioner. She has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. *See* 42 U.S.C. § 405(g).

(Dkt. Nos. 10, 11.) For the reasons set forth below, Plaintiff's motion is granted and Defendant's motion is denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on July 27, 1958. Plaintiff has completed education through high school and can communicate in English. He has previously worked as a janitor, truck driver and farm laborer. Generally, Plaintiff's alleged disability consists of chronic dorsal back pain due to degenerative disc disease, degenerative joint disease, chronic sacroiliac joint dysfunction, diabetes mellitus and hypothyroidism. His alleged disability onset date is October 1, 2003, and his date last insured is June 30, 2009.

### B. Procedural History

On June 29, 2009, Plaintiff applied for Social Security Disability Insurance and Supplemental Security Income. Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On November 10, 2010, Plaintiff appeared before the ALJ, Arthur Patane. (T. 23-39.) The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on April 29, 2011. (T. 10-22.) On April 20, 2012, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-5.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (T. 15-2.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (T. 15.) Second, the ALJ found that, during the

relevant time period, Plaintiff's chronic dorsal back pain due to degenerative disc disease, degenerative joint disease and chronic sacroiliac joint dysfunction were severe impairments, but that Plaintiff's diabetes mellitus and hypothyroidism were not severe. (T. 15-16.) Third, the ALJ found that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 16.) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) but that he should avoid working on scaffolding or ladders and avoid repetitive twisting. (T. 16-21.) Fifth, the ALJ found that Plaintiff is unable to perform any past relevant work. (T. 21.) Sixth, and finally, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 21-22.)

## II.  THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.  Plaintiff's Arguments

Plaintiff makes five separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the ALJ violated the treating physician rule by giving little weight to the opinion of Plaintiff's treating physician but great weight to the opinions of two consultative examiners. (Dkt. No. 10 at 8-12 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ erred in concluding that Plaintiff has the RFC to perform light work because (1) the ALJ failed to credit Plaintiff's subjective complaints of pain, (2) the ALJ failed to consider Plaintiff's obesity, (3) the ALJ failed to consider the effects of Plaintiff's diabetes and hypothyroidism on his ability to work, and (4) the ALJ failed to use a vocational expert to determine whether a person with a combination of Plaintiff's exertional and non-exertional impairments could perform any work. (*Id.* at 12-18.) Third, Plaintiff argues that the ALJ committed legal error by failing to

apply the proper legal standards in assessing Plaintiff's credibility. (*Id*. at 18-20.) Fourth, Plaintiff argues that it was error for the Appeal's Council to fail to consider or analyze the new evidence it received from Plaintiff. (*Id.* at 20-25.) Fifth, and finally, Plaintiff argues that the ALJ erred in determining that Plaintiff was not disabled because he was not treated by specialists. (*Id.* at 25-26.)

### B. Defendant's Arguments

In response, Defendant makes four arguments. First, Defendant argues that the Plaintiff's diabetes, hypothyroidism and obesity were not severe impairments. (Dkt. No. 11 at 11-12 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ's RFC determination is supported by substantial evidence because the ALJ properly considered (1) the opinions of Drs. Wassef and Welch and (2) Plaintiff's subjective complaints. (*Id.* at 12-17.) Third, Defendant argues that the Appeals Council did not err in failing to consider new evidence that Plaintiff submitted from Drs. Lowell and Macelaru because the evidence consisted of reports that were authored after the relevant period. (*Id.* at 17-18.) Fourth, and finally, Defendant argues that Dr. Lowell's opinion was not entitled to controlling weight. *Id*. at 18-20.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial

evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the ALJ Erred in Failing to Find That Plaintiff's Diabetes Is a Severe Impairment

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated in Defendant's memorandum of law. (Dkt. No. at 11-12 [Def.'s Mem. of Law].) The Court would add the following analysis.

According to Social Security Regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit a [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). The standard for a finding of severity under the second step of the sequential analysis has been found to be de minimis, and is intended only to screen out the truly weakest of cases. *Davis v. Colvin*, No. 11-CV-0658, 2013 WL 1183000, at *8 (N.D.N.Y. Feb. 27, 2013) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995). At step two, the claimant bears the burden to provide medical evidence demonstrating the severity of his condition. *See* 20 C.F.R. § 404.1512(a); *Bowen*, 482 U.S. at 146.

Here, the ALJ found that Plaintiff's diabetes is not severe because Dr. Jonathan Lowell, M.D., considered it to be well controlled with medication and because the record reflects that medication has been effective in controlling Plaintiff's symptoms. The ALJ further noted that Plaintiff has not alleged any side effects from the use of his medications. Plaintiff contends that the ALJ erred by failing to consider his diabetes as a severe impairment given Dr. Lowell's opinion that it was only fairly controlled with medication and Plaintiff's testimony that he suffers from fatigue, which is a common side effect of diabetes.

To be sure, Plaintiff did testify that as a result of his diabetes, he is tired. (T. 38.) However, Plaintiff's treating physician, Dr. Lowell, reported on multiple occasions from 2007 through 2010 that Plaintiff's diabetes was well controlled with medication. (T. 212, 214, 216, 243.) In 2009, Plaintiff told consultative examiner, Dr. Nader Wassef, that his diabetes was being controlled with diet and exercise. (T. 218.) While Dr. Lowell reported that Plaintiff's diabetes was only fairly controlled, he did so in a July 2011 report to the Department of Social Services. (T. 263.) Because that evidence relates to a period outside the time frame

7

encompassed by the ALJ's decision, it is not part of the record that the Commissioner was required to consider. Finally, the ALJ correctly noted that Plaintiff has not had any emergency room visits or hospitalizations due to uncontrolled symptoms from diabetes. Accordingly, the ALJ's finding that Plaintiff's diabetes was not severe is supported by substantial evidence. *See Ramos v. Astrue*, No. 11-CV-6142, 2013 WL 919528, at *13 (S.D.N.Y. Mar. 12, 2013).

> **B. Whether the ALJ Erred in Failing to Consider the Effect of All of Plaintiff's Impairments on His Ability to Work**

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 10 at 15-17 [Pl.'s Mem. of Law].) The Court would add the following analysis.

Plaintiff argues that the ALJ failed to consider all of his impairments when determining his ability to work. Specifically, Plaintiff argues that the ALJ failed to consider the effect of his obesity (in combination with his spinal disorder), diabetes and hypothyroidism on his ability to work. Defendant counters that both Plaintiff's diabetes and hypothyroidism were well controlled with medication and that Plaintiff has failed to identify any functional limitations as a result of his obesity.

To be sure, the record supports the ALJ's finding that Plaintiff's diabetes and hypothyroidism are not severe impairments. However, the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity." *See* 20 C.F.R. § 404.1523. Here, the ALJ did not consider Plaintiff's diabetes or hypothyroidism in the reminder of his decision, and did not consider Plaintiff's obesity at all.

Although "[o]besity is not in and of itself a disability; . . . [it] may be considered severe-and thus medically equal to a listed disability-if alone or in combination with another medically determinable ... impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." *Cruz v. Barnhart*, No. 04-CV-9011, 2006 WL 1228581, at *10 (S.D.N.Y. May 8, 2006); *see also* SSR 02-1p; 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(Q) (instructing adjudicators to assess carefully the combined effects of obesity and musculoskeletal ailments during Steps two and four because "[o]besity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system ... The combined effects of obesity with musculoskeletal impairments can be greater than the effect of each ... considered separately."). The Social Security Administration has said that the ALJ is obligated to "explain how [he] reached [his] conclusions on whether obesity caused any physical or mental limitations." SSR 02-1 p, 2000 WL 628049, at *7.

In this case, the record established that Plaintiff was 5'10" tall and weighed between 250-278 pounds. (T. 212-214, 237-239, 220, 243, 251.) Dr. Lowell, Plaintiff's treating physician, diagnosed Plaintiff as having obesity on a number of occasions. (T. 212-215, 240, 243.) The ALJ made no mention of obesity in his decision and (apparently) did not assess whether Plaintiff's obesity, in combination with his other impairments, limited his ability to perform work.

To be sure, there is caselaw to support the premise that an ALJ's failure to address obesity is harmless where Plaintiff's treating providers were aware of his weight problem and presumably incorporated that issue when assessing his limitations. *See, e.g., Guadalupe v. Barnhart*, No. 04-CV-7644, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24,2005) (citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir.2004)) (reasoning that the ALJ "relied on" medical

9

evidence that made no mention that plaintiff was obese even though it must have been apparent at the time of the assessment and thus the ALJ "sufficiently, if somewhat indirectly, accounted for plaintiff's obesity"); *Martin v. Astrue*, No. 5:05-CV-72, 2008 WL 4186339, *3-4, 11-12 (N.D.N.Y. Sept. 9, 2008) (finding ALJ's failure to explicitly address plaintiff's obesity harmless error, because the ALJ "utilized" the physical limitations from various doctors who considered plaintiff's obesity); *but see Hogan v. Astrue*, 491 F. Supp. 2d 347, 355 (W.D.N.Y.2007) (finding error even though the ALJ found plaintiff's obesity a severe impairment, because it was "unclear whether he considered plaintiff's obesity at steps four and five of the disability evaluation").

In the present case, the ALJ assigned little weight to the opinion of Dr. Lowell, who was the only medical source that specifically acknowledged Plaintiff's obesity, while giving great weight to the opinions of the consultative examiners who, while noting Plaintiff's height and weight, did not address the impact of obesity on Plaintiff's functional abilities. It is quite possible that both of the consultative examiners considered Plaintiff's obesity when formulating their conclusion. However, because the ALJ did not adequately address these findings, his failure to discuss the potential limiting effects of obesity cannot be considered harmless. Moreover, the ALJ's decision cannot be salvaged because obesity was incorporated within Dr. Lowell's findings, which the ALJ ultimately did not accept.

Because the ALJ was required to considered all of Plaintiff's impairments after step two of the sequential analysis, even those that are not severe, *see* 20 C.F.R. § 404.1523, the ALJ's failure to consider whether Plaintiff's diabetes, hypothyroidism or obesity, in combination with his musculoskeletal impairment, impacted his ability to work was error. On remand, the ALJ should discuss and determine the impact of Plaintiff's obesity in accordance with SSR 02-1p.

## C. Whether the ALJ Properly Weighed the Opinions of Drs. Lowell, Wassef and Welch

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 10 at 8-12 [Pl.'s Mem. of Law].) The Court would add the following analysis.

Under the "treating physician's rule," controlling weight is given to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir.2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000). Regulations require ALJs to set forth his or her reasons for the weight assigned to a treating physician's opinion. *See Shaw*, 221 F.3d at 134.

The record includes treatment notes and reports from Plaintiff's treating physician, Dr. Jonathan Lowell, M.D. Dr. Lowell treated Plaintiff for at least seven years for back pain, diabetes, hypothyroidism and obesity. On January 18, 2010 and July 16, 2010, Dr. Lowell completed employability assessment and disability screening reports regarding Plaintiff at the request of the Department of Social Services. (T. 235-236, 249-250.) Dr. Lowell reported, regarding Plaintiff's physical functioning, that Plaintiff is moderately limited in walking,

standing, sitting and climbing; and very limited in lifting, carrying, pushing, pulling and bending. (*Id.*) Regarding mental functioning, Dr. Lowell opined in January of 2010 that Plaintiff was moderately limited in the ability to function in a work setting at a consistent pace, but that Plaintiff was very limited in that area of functioning in July of 2010. (*Id.*)

The ALJ gave limited weight to Dr. Lowell's opinion regarding Plaintiff's RFC because it "is without substantial support from the other evidence of record." (T. 17.) In further support of the limited weight assigned to Dr. Lowell's opinion, the ALJ noted that Dr. Lowell "only prescribed anti-inflammatory medication for [Plaintiff's] pain and had not offered any referrals to an orthopedist, physical therapy or pain management" and that Dr. Lowell "provided very little explanation of the evidence relied on in forming [his] opinion." (T. 18.)

The ALJ's discussion of the "other evidence of record" is limited to the reports of consultative examiners, Drs. Wassef and Welch. (T. 18-20.) On August 20, 2009, Nader Wassef, M.D. performed a consultative examination of Plaintiff. (T. 218-222.) Dr. Wassef noted that Plaintiff had full range of motion of the spine and extremities, but that Plaintiff was in discomfort during the examination of his upper and lower back. (T. 221.) Dr. Wassef opined that, he "was not able to detect evidence of limitations of movements in the musculoskeletal system in today's examination, but I do realize that [Plaintiff] is experiencing upper, as well as lower back pain, and left hip area pain, as well as left leg pain." (T. 222.)

On February 28, 2011, Dr. David G. Welch, M.D., performed a consultative examination of Plaintiff and, at the request of the Commissioner, completed a Medical Source Statement of Plaintiff's ability to do work-related physical activities. (T. 251-258.) Dr. Welch noted that Plaintiff had good range of motion of the upper and lower extremities but had limited back and forward extensions of the spine. (T. 252.) Dr. Welch reported his impression that Plaintiff has

12

"dorsal back pain due to degenerative joint and disc disease and most likely in the low back due to a chronic smoldering sacroiliac joint dysfunction." (*Id.*) In Dr. Welch's opinion, Plaintiff can lift up to 20 pounds occasionally and 10 pounds frequently but can only carry up to 10 pounds occasionally. (T.253.) Dr. Welch further opines that Plaintiff can sit for two hours at a time up to six hours in an eight-hour workday; stand for up to two hours in an eight-hour workday; and walk for 30 minutes at a time for up to two hours in an eight-hour workday. (T. 254.) Finally, Dr. Welch opined that Plaintiff can only occasionally (defined as very little to one third of the time) climb stairs and ramps, balance, stoop, kneel, crouch and crawl and can never climb ladders or scaffolds. (T. 256.)

The record also reflects that in July 2009 Plaintiff had x-rays of his lumbar spine with obliques and his left hip. (T. 209, 223.) The spinal x-ray shows moderate disc space narrowing at L1-L2, L2-L3, L3-L4, and L5-S1 with mild narrowing elsewhere in the lumbar spine. (T. 223.) The radiologist reported his impression that Plaintiff has "multilevel degenerative disc disease and facet joint arthropathy." (*Id.*) The results of Plaintiff's hip x-ray were normal. (T. 209.) Dr. Welch noted that the negative hip x-ray "rules against but does not totally rule out degenerative arthritis in the hip joint." (T. 252.)

In the first instance, the ALJ was required to explain why he did not give Dr. Lowell's opinion controlling weight. While the ALJ asserts that Dr. Lowell's opinion is not consistent with the totality of the evidence in the record, he fails to note that both Drs. Wassef and Welch agree that Plaintiff experiences back pain and that Dr. Welch agreed that Plaintiff is limited in his ability to stand, sit, walk, climb, lift, carry, push, pull and bend. While Drs. Welch and Lowell describe the level of limitation in different ways, it is notable that the ALJ failed to request a Medical Source Statement from Dr. Lowell. Moreover, the ALJ failed to acknowledge that Dr. Lowell's opinion is supported by Plaintiff's spinal x-ray results.

13

The Court also notes that Dr. Welch's opinion, which the ALJ assigned great weight, is inconsistent with the ALJ's RFC finding. Dr. Welch opined that Plaintiff can only carry up to ten pounds occasionally, when the Social Security Regulations provide that light work requires frequent lifting or carrying of objects weighing up to 10 pounds. *See* 20 C.F.R. § 404.1567(b). The regulations also provide that a job is in the category of light exertion when it requires a good deal of walking or standing, yet Dr. Welch opined that Plaintiff can only walk and stand up to two hours out of an eight-hour workday.

For these reasons, remand is necessary so that the ALJ may further develop the record where necessary in order to (1) explain his reasoning for the weight assigned to the opinions of Drs. Lowell, Wassef and Welch and (2) reexamine his RFC assessment.

### D. Whether the ALJ Properly Assessed Plaintiff's Credibility

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 10 at 18-20 [Pl.'s Mem. of Law].) The Court would add the following analysis.

A Plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15, 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id*., at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id*.

Here, Drs. Lowell, Wassef and Welch all acknowledge that Plaintiff experiences pain and Drs. Lowell and Welch both opined that Plaintiff has functional limitations. Plaintiff testified that he is able to cook and clean his small apartment and that he likes to fish, visit with friends and family and watch TV. (T. 32, 36.) However, Plaintiff also testified that he does his grocery shopping a little at a time, does dishes once per week and does laundry once per month. (T.36, 37.) Plaintiff also testified that he experiences pain every day, but that applying heat or ice makes it better, and that getting dressed is a challenge due to stiffness and lack of flexibility. (T. 35, 38.) Around the time of his application for benefits, Plaintiff completed a function report wherein he alleged abilities and limitations consistent with his hearing testimony. (T. 141-151.)

The ALJ acknowledged Plaintiff's allegations of limitations in mobility due to pain but noted Plaintiff's reports of being able to take care of his personal needs and household chores. The ALJ concluded that while Plaintiff's impairments could reasonably be expected to cause his alleged symptoms, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [the ALJ's RFC] assessment." (T. 17.)

First, as indicated in Point IV.C. of this Decision and Order, the ALJ's RFC assessment is inconsistent with the opinion of Drs. Lowell and Welch. Moreover, "[i]t is erroneous for an ALJ to find a [plaintiff's] statements not fully credible because those statements are inconsistent with the ALJ's own RFC finding." *Ubiles v. Astrue*, No. 11–CV–6340, 2012 WL 2572772, at * 12 (W.D.N.Y. July 2, 2012).[2] Instead, the ALJ must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." *See* SSR 96–7p.

Accordingly, remand is necessary so that the ALJ may properly assess Plaintiff's credibility in accordance with the regulations and after reexamination of the relevant evidence in the record.

---

[2] *See also Nelson v. Astrue*, No. 5:09–CV–00909, 2010 WL 3522304, at *6 (N.D.N.Y. Aug. 12, 2010), *report and recommendation adopted*, 2010 WL 3522302 (N.D.N.Y. Sept. 1, 2010); *Kennedy v. Astrue*, No. 3:09–CV–0670, 2010 WL 2771904, at *5 (N.D.N.Y. June 25, 2010), *report and recommendation adopted*, 2010 WL 2771895 (N.D.N.Y. July 12, 2010); *Smollins v. Astrue*, No. 11–CV–424, 2011 WL 3857123, at *10–11 (E.D.N.Y. Sept. 1, 2011); *Mantovani v. Astrue*, No. 09–CV–3957, 2011 WL 1304148, at *5 (E.D.N.Y. Mar. 31, 2011).

E. **Whether the Appeals Council Erred in Failing to Consider or Analyze New Evidence**

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11 at 17-18 [Def.'s Mem. of Law].) The Court would only add the following analysis.

Plaintiff argues that the Commissioner erred when the Appeals Council failed to consider new evidence Plaintiff submitted. To be sure, "new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). However, "the new evidence submitted to the Appeals Council forms part of the administrative record under review . . . only to the extent that it relates to the time frame encompassed in the ALJ's decision." *Baladi v. Barnhart*, 33 F. App'x 562, 564 (2d Cir. 2002) (citing *Perez*, 77 F.3d at 45). Here, Plaintiff submitted to the Appeals Council a medical source statements from Dr. Lowell dated July 26, 2011 and February 1, 2012, and examination notes from Dr. Dragos Macelaru, M.D., from August 18, 2011 and September 29, 2011. (T. 8-9, 262-263, 266-275.) All of these records relate to a period after the ALJ rendered his decision in this case. Accordingly, those records are not part of the administrative record under review, and it was not error for the Appeals Council to fail to consider them in denying review.

F. **Whether the ALJ Erred at Step Five By Failing to Obtain the Opinion of a Vocational Expert**

Here, at step five of the sequential analysis, the ALJ did not obtain the opinion of a vocational expert in determining whether there are jobs in the national economy that Plaintiff can perform. Instead, the ALJ decided, relying solely on the Medical-Vocational guidelines, that there are jobs in the national economy that Plaintiff can perform. Plaintiff argues, and Defendant

fails to dispute, that due to the existence of pain, which is a non-exertional limitation, the ALJ should have obtained the opinion of a vocational expert.

At step five of the sequential analysis, the Commissioner can usually meet his burden to establish that, if a plaintiff is unable to perform his past work, there is other work which he could perform, by reliance on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grids." *See Baldwin v. Astrue*, No. 07-CV-6958, 2009 WL 4931363, at *20 (S.D.N.Y. Dec. 21, 2009). However, when a plaintiff suffers from non-exertional limitations that significantly limit his employment opportunities, exclusive reliance on the Grids is inappropriate. *See Baldwin*, 2009 WL 4931363, at *27 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir.1986)). "A plaintiff's range of potential employment is significantly limited when he suffers from the 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a [plaintiff's] possible range of work as to deprive him of a meaningful employment opportunity.'" *Id.* (quoting *Bapp*, 802 F.2d at 606). However, it is important to note that "the mere existence of a non-exertional impairment does not automatically preclude reliance on the guidelines." *Zabala v. Astrue*, 595 F.3d 402, 410–411 (2d Cir.2010) (citing *Bapp*, 802 F.2d at 603).

Because remand in necessary so that the ALJ may, among other things, revisit the weight assigned to the opinion of Drs. Lowell, Wassef and Welch, remand is also necessary so that the ALJ may revisit his decision at step five of the sequential analysis after having reevaluated his RFC determination.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: August 13, 2013
      Syracuse, New York

_____
Hon. Glenn T. Suddaby
U.S. District Judge